CHARLES BRADBURY *vs.* HENRY C. JACKSON, and others.

Kennebec.    Opinion April 20, 1903.

*Will.    Devise and Legacy.    Life Estate.    Trust Fund.    Powers.    Residue.*

When a testator's intention is clearly expressed in the will, and violates no rule of public policy, it overrides technical rules of construction and must be given effect.

That intention is to be gathered from the whole will, and not from isolated words and phrases. A will is not to be expounded by a word here and another there, but by what, on the whole, was the testator's scheme for the rational disposition of his estate.

The language of the will should be viewed in the light of the extrinsic circumstances surrounding its execution, and connecting the parties and the property devised, with the testator and with the will itself.

By the ninth item of his will a testator divided the residue of his estate consisting largely of stocks and bonds into two equal parts, one-half to the trustees of his granddaughter, and one-half to the trustees of his only surviving son; further directing that the certificates of stock so received

should show for whom they held them, as well as the names of the trustees.

By the tenth item he appointed the trustees of his granddaughter, and after investing them with necessary powers for the preservation of the·property and fixing the time when she should· come into the full possession and absolute control of her part of the estate, he made her his residuary legatee, including lapsed bequests, and the reversionary or other interests in the property in trust for his son; but subject to the provision that should she marry and die before she was twenty-seven years old, leaving issue, then with the right of disposal of one-fourth, etc., and the residue was to be divided among certain persons, or their issue, named in the will.

The eleventh item, after appointing trustees for his son and giving them half of his property, provides as follows: — "As the property is mostly in stocks paying dividends, and a few bonds that will not soon mature, I direct that the trustees shall keep an annual income account and balance the same annually, and pay the net income thereof (deducting all charges and expenses) to the said Charles during his life. The account will thus be closed at the end of every year, and should be settled in the probate court every third year. I wish that he should be paid in quarterly payments, and if convenient, monthly. He is my son, and I should prefer to give him the property directly free from the trust, were I not satisfied that it is best for him that I should do as I propose. I am led to fear, from the unfortunate disposition of the property he has had control of, that what I leave for him would also be lost, if left for his unrestricted control, and old age might find him in need. Should he lose his present wife and marry again, and have issue by such wife, such issue, if alive, shall have the property left for him, as aforesaid. Should such wife survive him without issue, he has the right to the disposition of one-half of the block of brick stores in Augusta, and can make provision for her. Should he be very unfortunate and there should be any pressing necessity, said trustees, upon so finding and certifying, may advance to him from time to time, not exceeding five thousand dollars in all. Upon the decease of my sons, James W. and Thomas W. S., I gave their half of the block of brick stores on Water Street (that fell to me as their heir) to my surviving sons, Henry, and Charles, placing the latter in trust for him with the right to dispose of it by will. As he has often complained in regard to the disposition of his mother's property, I wish to say here, that after the payment of specific bequests, her property was divided equally between Henry and Charles, and no more of Charles' half was put in trust than she was bound by her promise to her brother, Henry R. Smith, to so place it in order to receive anything from him."

Upon a bill of interpleader filed by the son, the plaintiff, to obtain the construction of the will, he claimed that under item eleven he took at once an absolute equitable fee in the corpus of the estate therein devised in trust, restricted to the enjoyment during his lifetime of the income only subject to the limitation over to his issue, if any, and if no issue then that the

trust would terminate at his death, and both the legal and equitable fee would vest in his heirs, subject to any intermediate disposition of it by him.

Reading the will in this case in the light of the facts, which the testator had in his mind and recited in the will itself, *held;* that the plaintiff takes a life estate in the income only of the trust fund named in the eleventh item of the will, with a right to have paid to him not exceeding $5000.00 of the principal, contingent upon the trustees finding and certifying that there is a pressing necessity for it.

On report.    Bill in equity.    Sustained.    Decree according to opinion.

This was a bill in equity brought by Charles Bradbury, the only surviving son of James W. Bradbury, late of Augusta, for the construction of his father's will, and especially under items ninth, tenth and eleventh.    These items are set forth in full in the opinion of the court.    The case came before the law court upon report.

The questions raised under these items of the will were:

1.    Whether under the provisions of the will the plaintiff takes an absolute estate at law or in equity in one undivided half of the residue, both principal and income, subject only to a trust as to the income during his lifetime; or whether he takes a life estate only in the income; or, if neither, what estate he takes in the principal and income.

2.    In the event of the death of the plaintiff without will and without issue by his present wife, to whom should the trustees deliver the principal in final disposition under the terms of the will.

*O. D. Baker,* for plaintiff.

Counsel argued the following points:    (1)    The intention of the testator which is to govern must be gathered conclusively from the language used, and not from any supposed intention, which finds no legal expression in the will itself.    (2)    The general intent of the testator, his general plan of disposition of his estate as a whole, is always of leading importance.    (3)    The general intent of the testator here, as to the disposition of his estate as a whole, is to divide it equally between his two surviving heirs, his granddaughter Eliza and his son Charles.    (4)    The particular intent of the testator here, as shown in the disposing clauses to his granddaughter and his son,

respectively, preserves and enforces this same equality of division. (5) The two opening clauses in items tenth and eleventh, being thus the principal and effective disposing clauses of those legacies, must be given their full and exact legal meaning, if they have one, regardless of results to either party. (6) The language used in each of these two disposing clauses admits but one legal interpretation, and to that end the language used is legally apt, exact and exhaustive, and if the will stopped there, would pass instantly on the testator's death through the trustees to the beneficiary, in each case, the full beneficial title both to the corpus and the income of the property bequeathed, the trust being but a dry or passive one. (7) If the disposing clause has first, by apt and unmistakable words, conveyed a fee, legal or equitable, that grant will not be cut down or diminished to something less than a fee by any subsequent words, unless those words also have a meaning as definite and unmistakable as the principal disposing clause. (8) The subsequent clauses of item eleventh, completing the bequests to Charles, contain simply restrictions on the mode of enjoyment of the income, but contain no words which, either expressly or by implication, cut down the equitable fee in the corpus already granted by the principal disposing clause.

The residuary clause in item ten cannot operate to strip from Charles, and transfer to Eliza, the entire property or corpus of the fund left for Charles, because the general nature of the clause forbids it; the clause is strictly a residuary clause, and nothing more.

*L. C. Cornish and N. L. Bassett; J. O. Bradbury,* for defendants.

SITTING: WISWELL, C. J., STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

POWERS, J. This bill is brought to obtain a construction of a part of the will of James W. Bradbury. The testator left an estate of about $217,000.00, all in personal property. By the first eight items of his will he gave about $37,000.00 in various public or private bequests, including a legacy of $8000.00 to his son Charles. The balance of his estate he disposed of by the ninth, tenth, and eleventh items of his will, which are as follows:

"Ninth. The residue of my property that remains after the payment of the bequests, gifts, debts and expenses provided for in the eight preceding sections, is to be divided into two equal parts by my executors, as soon as the last bequest is paid, and by them transferred and delivered to the trustees hereinafter named, one-half to the trustees for Eliza Louisa Bradbury, and one-half for the trustees of Charles Bradbury. They shall see that the certificates of the stock they deliver shall show for whom the trustees are holding the property, as well as the name of the trustees.

"Tenth. I name Henry C. Jackson, my nephew, and Louisa H. Bradbury, as trustees for Louisa H. Bradbury, and give to them to hold in trust for Eliza Louisa Bradbury the half of the property transferred to them by my executors. It is mostly in stocks, with a few bonds, and will give little trouble, so that Mr. Jackson can find time to look after the business. The trustees shall have all necessary powers in regard to the preservation of the property, and the investment of the interest until their ward is to have it. When the said Eliza Louisa shall reach the age of twenty-one, she is from that time to have annually the net income of her property, to be paid to her by her trustees in quarterly payments, unless she shall prefer to leave it with the trustees to invest for her.

"On the arrival of my dear granddaughter to that age, I wish to make her a birthday present, and for that purpose I direct the trustees to transfer to her and deliver the certificate of fifty-two or fifty-three shares of the stock of the Dexter and Newport Railroad, which they will have in trust for her.

"As she will have from her father's estate as much property as she, with her inexperience, can be likely to manage, I deem it for her interest and hereby direct that the trustees continue their trust of the principal, until she shall reach the age of twenty-seven, when they shall transfer to her one-half, and when she reaches the age of thirty-three, the whole of the property, after deducting all proper charges.

"I make her, the said Eliza Louisa, my residuary legatee; including lapsed bequests and the reversionary or other interests in the property in trust for my son Charles. All of her share of the property shall

vest in her when she reaches the age of twenty-seven, although a part shall remain in trust. Should she marry and decease before that age, leaving issue, she shall have the right, after she is twenty-one, to dispose of one-fourth of all her property, and her mother shall have one-fourth. The residue shall be divided into shares, and paid by the trustees to the following persons in the proportions according to the shares, and to the issue of any who may die, viz.: To my son Charles four shares, and for his wife, Eva, one share: To James Otis Bradbury, four shares, and one for his wife, and one for each of his two children; his mother, brother, and sister, and the husband of his sister are each to have a share: To Cotton M. Bradbury, one share for himself, one for his daughter Jennie, and one for his two minor children: To Mrs. Margaret H. Gregorie, Miss Esther H. Gregorie, Mrs. Alice G. Hayward, Mrs. Julia M. Claghorn, Mrs. Margaret H. Carter, Miss May Martin, one share for each.

"Eleventh. I name James Otis Bradbury, Oscar Holway, and Henry C. Jackson of Boston, as Trustees for my son Charles Bradbury, and I give to them, in trust for him, the half of my property, to be transferred to them by my executors.

"As the property is mostly in stocks paying dividends, and a few bonds that will not soon mature, I direct that the trustees shall keep an annual income account and balance the same annually, and pay the net income thereof (deducting all charges and expenses) to the said Charles during his life. The account will (thus?) be closed at the end of every year, and should be settled in the Probate Court every third year.

"I wish that he should be paid in quarterly payments, and if convenient, monthly. He is my son, and I should prefer to give him the property directly free from the trust, were I not satisfied that it is best for him that I should do as I propose. I am led to fear, from the unfortunate disposition of the property he has had control of, that what I leave for him would also be lost, if left for his unrestricted control, and old age might find him in need. Should he lose his present wife and marry again, and have issue by such wife, such issue, if alive, shall have the property left for him, as aforesaid.

"Should such wife survive him without issue, he has the right to the disposition of one-half of the block of brick stores in Augusta, and can make provision for her.

"Should he be very unfortunate and there should be any pressing necessity, said trustees, upon so finding and certifying, may advance to him from time to time, not exceeding five thousand dollars in all.

"Upon the decease of my sons, James W. and Thomas W. S., I gave their half of the block of brick stores on Water Street (that fell to me as their heir) to my surviving sons, Henry and Charles, placing the latter in trust for him with the right to dispose of it by will.

"As he has often complained in regard to the disposition of his mother's property, I wish to say here, that after the payment of specific bequests, her property was divided equally between Henry and Charles, and no more of Charles' half was put in trust than she was bound by her promise to her brother, Henry R. Smith, to so place it in order to receive anything from him."

The plaintiff claims that under item eleven he took at once an absolute equitable fee in the corpus of the estate therein devised in trust, restricted to the enjoyment during his lifetime of the income only, subject to the limitation over to his issue, if any, and if no issue then that the trust would terminate at his death, and both the legal and equitable fee would vest in his heirs, subject to any intermediate disposition of it by him.

Great research and learning have been displayed, and a vast array of authorities cited by counsel in support of the successive steps by which it is sought to establish the above proposition. It would be unprofitable to here undertake to distinguish or analyze the cases cited. Precedents and rules of testamentary instruction may afford valuable aid when the testator's intention is in doubt, but when that intention is clearly expressed in the will, and violates no rule of public policy, it must be given effect. It overrides precedents and technical rules of construction. This "pole star", as it is sometimes termed, of testamentary construction "leads into various courses, since every will must be steered by its own luminary. Yet uniform justice is better than strict consistency." Schouler's Exors. & Admrs. § 474. "It may well be doubted," said Mr. Justice Miller in *Clark* v. *Johns-*

*ton,* 18 Wall. 493, "if any other source of enlightenment in the construction of a will is of much assistance than the application of natural reason to the language of the instrument, under the light which may be thrown upon the intent of the testator by the extrinsic circumstances surrounding its execution, and connecting the parties, and the property devised, with the testator, and with the instrument itself." No two wills are ever precisely alike. No two testators are situated precisely the same, and it is both unsafe and unjust to interpret the will of one man by the dubious light afforded by the will of another.

Coming now to the instrument before us, we find that the testator had two natural heirs, his granddaughter Eliza and his son Charles. The former had been a member of his household, and he had conveyed to her and her mother his homestead in Augusta. He calls her in the will his "dear granddaughter," and it is evident that the ties of association had strengthened those of natural affection. He had made advances to his son for him to go into business. He had bought of him his one-fourth interest in the homestead. The testator knew that his wife had devised property to Charles, placing it in trust as she was bound to do by her promise to her brother in order to receive anything from him. Charles had often complained of the disposition which was made of his mother's property. The testator had himself conveyed property to Charles, placing it in trust, with a right of disposition by will. He had seen his son make an unfortunate disposition of the property he had had the control of, and he feared that what he should leave him would also be lost if left to his unrestricted control, and that old age might find him in need. He anticipated that, notwithstanding the property Charles had already had from both the testator and his wife, and the $8000.00 bequeathed him by the will, he might in the future be very unfortunate, and there might arise a pressing necessity for his relief. It is evident that he did not have confidence in his son's business capacity, in his ability to successfully manage or long retain any property over which he had the power of alienation; and that, judging the future by the past, he feared an "unfortunate disposition" of such means as Charles might control. That these facts were present in the testator's mind

at the time he made the will cannot be questioned, for they are all recited in the will itself.

The ninth item of the will directs that the residue of the property, after paying bequests, gifts, debts, and expenses, be divided into two equal parts by his executors, and transferred, one-half to the trustees for his grandchild, and one-half for the trustees of his son.   In item ten he gives to the trustees for his grandchild the one-half of the property conveyed to them by his executors, and declares the purposes of the trust, and the nature and extent of the beneficial interest of the cestui que trust.   He makes her his residuary legatee, including lapsed bequests, "and the reversionary or other interests in the property in trust for my son Charles."   In the next item of the will he gives to the trustees in trust for Charles the half of the property to be transferred to them by his executors, and proceeds to declare the purposes of the trust, and to define the nature and extent of the son's beneficial interest.   The trustees are directed to pay the net income to Charles during his life, in quarterly payments, and if convenient, monthly.   Should he marry again, as he did during the testator's lifetime, and have issue, such issue are to have the property. Should the wife survive him without issue, the testator states that Charles has the right to dispose of one-half of the block of brick stores in Augusta, and can make provision for her.   If Charles is unfortunate, and there is pressing necessity for it, the trustees may advance him not exceeding $5000.00 in all.

Such are the terms of the will.   Reading it in the light of the facts which the testator had present in his mind at the time he made it, we think it clear that he intended to give to his son a life interest in the income only of the trust fund named in item eleven of his will, with a right in case of misfortune and pressing necessity, upon the trustees so finding and certifying, to receive not exceeding five thousand dollars from the principal.   Indubitable evidence is afforded that he believed he had done this and nothing more by the statements, that his granddaughter is his residuary legatee in the reversionary and other interests in the property in trust for his son, and that the son can provide for his wife, in case he marries again, out of the property over which he already had the power of disposition by

will. It is incredible that Mr. Bradbury would have incorporated this last statement into the same clause of a will by which he intended to give Charles the right to dispose by will of $90,000.00 of property. Mr. Bradbury was a lawyer of long experience and large practice. The matter of the son's right to dispose of property by will was present in his mind, brought sharply home to his attention at the time he was writing the very item of the will under which the plaintiff claims, and yet plainly the testator regarded the block of brick stores as the only property from which Charles could make a future testamentary provision for his wife. No thought could have been further from his mind when he penned that statement than that Charles had the entire beneficial interest in and the power of disposal by will of the $90,000.00 which he had just given to trustees, with directions to pay the net income to Charles during his life.

It is strongly urged that certain parts of the will manifest a contrary intention. Stress is laid upon the direction that the executors shall see that the certificates of stock they deliver shall show for whom the trustees are holding the property. This may require a few more words, but it can be done as well under one construction of the will as the other. In the residuary clause the testator speaks of the reversionary or other interests "in the property in trust for' my son Charles." In a sense it was in trust for Charles, as he was to have the income from it for life, and possibly $5000.00 of the principal. The context wherein he speaks of reversionary or other interests in this fund passing to the residuary legatee, is strong evidence that when he used the words he did not intend that Charles should have the entire beneficial interest in the property. It is hardly probable, in view of all the provisions and recitals in the will, and in view of the advanced age of the testator when he made it, that when he spoke of reversionary or other interests he had nothing more in his mind than the remote possibility of his surviving his son.

When the testator explains his reasons for making the disposition of his property which he did, it is contended that the statement that he would prefer to give Charles the property directly, free from the trust, is inconsistent with an intention that he should not take the entire beneficial interest; and that the same is true of the further

statement in the same connection, that he fears what he leaves for him would be lost if left for the son's unrestricted control, and old age might find him in need. That might be true if the words stood alone, but these words were used to express the testator's reason, as well as his regret that he felt compelled not to give Charles a larger interest than he did. He feared that whatever the son had the control of would be "lost." The words must be read in connection with the other parts of the will, which plainly show an intention to give but a life interest in the income. It is not probable that the testator would give an unlimited power of disposition over a large estate to one whom experience had taught him was incapable of wise and prudent business management.

Lastly, the use of the word "advance" is said to indicate that the testator understood the corpus of the fund to be vested in his son. The use of the word is undoubtedly consistent with that view, but the intention of the testator is to be gathered from the whole will, and not from isolated words and phrases. The most exact of men do not always express themselves with equal care and precision. This is as true of wills as of other human transactions. The testator's predominant idea was to care for his granddaughter and his son, and that the bulk of the estate which he left should be preserved and applied for this purpose, and not "lost" or made the subject of "unfortunate disposition." Sad experience had taught him that what the son controlled he might well fear would be lost. His intention extended beyond the preservation of the income of the trust fund for the life of his son, and he provided that after Charles' death without issue it should vest in the "dear granddaughter." A will is not to be expounded by a word here and another there, but by what on the whole was the testator's scheme for the rational disposition of his estate.

Such being Mr. Bradbury's intention as expressed in his will, and construing the will in the light of that intention, has he used appropriate language according to the rules of law to carry that intention into effect? The plaintiff invokes the familiar rule of testamentary construction that where an estate in fee simple is devised, or an absolute gift of personal property made, a devise or gift over is void, and the

estate first given cannot afterwards be cut down except by the use of clear and appropriate language. *Wallace* v. *Hawes*, 79 Maine, 177; *Loring* v. *Hayes*, 86 Maine, 351; *Mitchell* v. *Morse*, 77 Maine, 423, 52 Am. Rep. 781. The answer is, that that is not this case. The trust fund is not given to the trustees "in trust for Charles" and nothing more. If it were, he would take both the legal and equitable estate in the corpus of the fund. The purposes of the trust are declared. They are to pay the net income to Charles during his life. If he has issue they are to have the property left for him "as aforesaid," that is, left in trust for the purpose of paying to him the net income. There is no absolute gift of this property. It is given in trust for Charles, to pay the net income to him during life. The words which give to the trustees and all the words which declare the purposes for which the trust is created, are to be read and construed together. A gift of the income of personal property is a gift of a life estate. *Sampson* v. *Randall*, 72 Maine, 109. If there is nothing in a will to show an intention that anything should be paid to a legatee except the income of a fund during life, the fund upon his death falls into the residue. *Wyman* v. *Bartlett*, 167 Mass. 222. Here there is ample evidence that the testator intended to give no more than the income, and that intention must be given effect. In *re Morgan* (1893) L. R. 3 Ch. 222, Lindley, C. J., says, "I should have thought that upon the will the matter was reasonably plain, but we are pressed with authorities. Now, I do not see why, if we can tell what a man intends, and can give effect to his intention as expressed, we should be driven out of it by other cases, or decisions in other cases. Of course there are principles of law which are to be applied to all wills, but if you once get at a man's intention, and there is no law to prevent you giving it effect, effect ought to be given to it."

The plaintiff takes a life estate in the income only of the trust fund named in the eleventh item of the will, with a right to have paid to him not exceeding $5000.00 of the principal contingent upon the trustees finding and certifying that there is a pressing necessity for it. The remainder in said trust fund, by the tenth item of the will, vested in Eliza Louisa Bradbury, subject to be divested by sur-

viving issue of the plaintiff, and at his death without issue is to be paid over by the trustees to her, if living, or if deceased to such person or persons as are entitled to her estate.

Costs and reasonable counsel fees are to be allowed out of the estate.

*Decree accordingly.*