ETHEL LEIGH HILLER

*vs.*

ALICE TAPLEY LORING, EXECUTRIX.

Cumberland.    Opinion February 23, 1927.

*The word "revert" as used in a will construed as "go to" or "pass to", the technical rule yielding to a practical construction.*

In this case the will, read in the light of the facts stated in the report and inferences fairly to be drawn therefrom, furnishes sound reason for holding that the decease of Frank W. Loring, mentioned in the fifth Section of the will, refers to his death whenever it should occur, whether before or after the decease of the testatrix.

On the death of Frank W. Loring the share of the estate of Ella B. Loring which he held during his lifetime passed to the plaintiff, and she is entitled to recover the same from his personal representative.

On report on an agreed statement.   Plaintiff seeks in an action of debt to recover from defendant, as executrix of the will of Frank W. Loring, moneys which she claims belong to her as beneficiary under the will of Ella B. Loring.   In accordance with the stipulation as to amount of recovery, judgment for the plaintiff for $1113.03.

The case fully appears in the opinion.

*Frank I. Cowan,* for plaintiff.

*Carl W. Smith and Sidney St. F. Thaxter,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, STURGIS, BASSETT, JJ., MORRILL, A.R.J.

STURGIS, J.   Ella B. Loring of North Yarmouth died January 30, 1907.   Her will, dated January 29, 1907, was duly allowed.   After providing for the payment of her debts, funeral charges and expenses

of administration, she made certain bequests which are not here involved, and by the fifth Section of her will provided:

> "The remainder of my property to be divided equally between Frank W. Loring of North Yarmouth, and Ethel Leigh Hilton Her share to be held in trust by Frank W. Loring, and paid to her to use for educational purposes.
>
> Should Frank W. Loring decease, his share to revert to Ethel Leigh Hilton. I do hereby appoint Charles R. Loring of Yarmouth, Maine, to be sole executor of this my last will and testament, without bonds."

Both Frank W. Loring, and Ethel Leigh Hilton, now by marriage Ethel Leigh Hiller, survived the testatrix. The residue of the estate amounted to $1,870.64. One half that sum, $935.64, was paid to Miss Hilton for educational purposes, and the balance of equal amount was held by Mr. Loring in his lifetime. November 12, 1923, Frank W. Loring died testate, leaving an estate of substantial amount. The defendant, Alice Tapley Loring, is his widow, and named in his will as executrix.

This action is brought to recover from the personal representative of Frank W. Loring the moneys which he received and retained under the fifth Section of Ella B. Loring's will. The case is submitted upon report of agreed statement of facts.

The cardinal rule for the interpretation of wills, to which all other rules must bend, is that the intention of the testator expressed in his will shall prevail, provided it is consistent with the established rules of law. *Philbrook* v. *Randall*, 114, Me. 397; *McGuire* v. *Gallagher*, 99 Me., 334; *Shaw* v. *Hussey*, 41 Me., 497. The intention, however, must be gathered from the language which the maker used. If the language used is of doubtful meaning, if it is inapt, crude or imperfect interpretation may aid in ascertaining this intent. The language will be subordinated to the intention. *Philbrook* v. *Randall*, supra.

To the foregoing must be added the equally well established canon, that when technical words or expressions are used they are presumed to have been used in the sense that has been ascribed to them by usage and sanctioned by judicial decisions, unless a clear intention to use them in another sense is apparent from the context. *Morse* v.

*Ballou,* 112 Me., 124;   *Houghton* v. *Hughes,* 108 Me., 233;   *Jacobs* v.
*Prescott,* 102 Me., 63.

The question which is at the foundation of this case is the proper
construction of the provision, "Should Frank W. Loring decease,
his share to revert to Ethel Leigh Hilton." At the treshold of our
inquiry we are met with an inaccuracy of expression. In its techni-
cal, legal significance, "revert" is defined as, "to return, come, or fall
back"; in other words, for property to return or go back to a person
who formerly owned it, but who parted with the possession or title
to it by creating an estate in another. Words & Phrases (1st Series),
6213. When a will affords no satisfactory clue to the real intention
of the testator, technical rules of construction of wills are to be fol-
lowed so far as they aid in determining that intention; but when the
testator's intention is clearly manifest from the whole will and vio-
lates no rule of public policy or positive law, technical rules, if they
would tend to defeat such intention, must yield to a practical con-
struction of the will. *Belding* v. *Coward,* 125 Me., 305; *Bradbury*
v. *Jackson,* 97 Me., 449. Hence it is held in numerous decisions that
the term "revert" may be construed as "go to" or "pass to", regard-
less of the fact that the taker has no prior interest in the property,
or whether that which passes is real or personal. *Beatty* v. *Trustees,*
39 N. J. Eq., 452; *Goerlitz* v. *Matawista,* 8 N. Y. S., 832; *Johnson* v.
*Askey,* 190 Ill., 58; *Warrum* v. *White,* 171 Ind., 574; *Estate of Ben-
net,* 134 Cal., 320; *Bates* v. *Dewson,* 128 Mass., 334. An examina-
tion of "the four corners" of this will convinces us that "revert" as
here used should be construed as meaning "go to" or "pass to."

In the first paragraph of the fifth Section of the will the testatrix
provides that the remainder of her property is to be divided equally
between her brother Frank and her grandniece Ethel, with provisions
that the share of the latter be placed in trust for educational purposes.
This clause as written then ends, its conclusion marked by a period.
A new paragraph follows with the initial provision, "Should Frank
W. Loring decease, his share to revert to Ethel Leigh Hilton," and
without punctuation or break continues with an appointment of
an executor.

The plaintiff advances the contention that by this provision a life
estate in Frank W. Loring was created, with an interest in the nature
of a remainder over to Ethel Leigh Hilton.

The defendant as insistently contends that the gift over is contin-

gent upon the death of the first taker in the lifetime of the testatrix, and he having survived the latter, the gift to him became absolute. She relies upon the rule of construction stated in *Briggs* v. *Shaw,* 9 Allen (Mass.), 516, 517, as follows: "In bequests of personal property, the leaning in favor of vested interests, and the absurdity of speaking of the one event which is sure to occur to all living as uncertain and contingent, have led the courts to interpret the words 'in case of the decease' of the first legatee, when followed by a second legacy of the same property, not to mean death at any time in the future, but death within a certain period, and, when no other period is indicated by the will, within the lifetime of the testator."

In *Vanderzee* v. *Slingerland,* 103 N. Y., 53, the rule is stated in these words: "It is said by Mr. Jarman (2 Jarm. on Wills, 752) to be an established rule that where a bequest is simply to one person, and in case of his death to another, the primary devisee surviving the testator, takes absolutely. This rule applies both to real and personal estate, and so far as I know the authorities in this country uniformly sustain the construction that where there is a devise or bequest simpliciter, to one person, and in case of his death, to another, the words refer to a death in the lifetime of the testator."

Statements and applications of this rule to facts sufficiently similar to bring the cases in point are found in *Britton* v. *Thornton,* 112 U. S., 526; *Hull* v. *Hull,* 101 Conn., 481; *Burnham* v. *Burnham,* 101 Conn., 529; *Tomlin* v. *Tomlin,* 301 Ill., 616; In re *Freeman's Estate,* 280 Pa., 273.

This general rule, however, is not a fixed canon of interpretation. In *Vanderzee* v. *Slingerland,* supra, the Court says: "This rule of construction in this class of cases is founded in part upon the disinclination of the courts to cut down a fee once given, except upon clear words, but rests more upon authority and precedent than reason. The rule established by the courts applies only where the context of the will is silent, and affords no indication of intention other than that disclosed by words of absolute gift, followed by a gift over in case of death, or of death without issue or other specified event. Indeed the tendency is to lay hold of slight circumstances in the will, to vary the construction and to give effect to the language according to its natural import."

And in accord with the rule well settled in this State, that if the language of a will is of doubtful meaning, in ascertaining the testator's

intention the words of the will are to be read in the light of the circumstances and conditions under which it was written, *Danforth* v. *Reed*, 109 Me., 93; *Palmer* v. *Palmer*, 106 Me., 28; *Roberts* v. *Stevens*, 84 Me., 325,—this general rule that a gift over, in the event of death of the first taker, applies strictly to death within the lifetime of the testator, must be subordinated not only to the language of the will itself but such language read in the light of the circumstances under which the testament was written and the relative situation of the parties. In *re Cramer*, 69 N. Y. S., 298; *O'Dell* v. *Uhl*, 116 N. Y. S., 187; *Stone* v. *McEckron*, 57 Conn., 198; *Willits* v. *Conklin*, 88 Neb., 805; see annotation 26 A. L. R., 609.

"Should (he) Frank W. Loring decease", gramatically is a conditional expression of uncertainty. It is the equivalent of "if he should decease" or "in the event of his decease." By the agreed statement of facts it appears that when the will was made the testatrix was in her last sickness, death following on the next day. The report states that "her condition grew rapidly worse, and on January 29th she sent word to call Charles R. Loring (the scriviner) right away to make her will." The inference is clear that she realized that her condition was critical and death perhaps not far off. Her brother undoubtedly was then in middle life, and nothing to the contrary appearing, we must presume then possessed normal health and vigor. It is stated that he did not die until November, 1923. The grand-niece, Ethel Hiller, was but a young child and apparently motherless. She had been the especial care of Miss Loring, and during the latter's illness was daily at her bedside. The scheme of the will as intended by the testatrix, we think, anticipated that the brother would survive the testatrix—for life enjoy one half of her estate as trustee, manage the other half for the educational benefit of the young grand-niece, and finally, whenever he should die, in the testatrix' lifetime or afterwards, his share should "go to" the child. It is not reasonable to suppose that the testatrix, almost in extremis as she then was and apparently realized, intended to provide for her brother's death before her own.

This Court is committed to the doctrine that after a gift of personal estate, absolute in terms and without words of inheritance or power of disposal,—a gift over of the same property may in itself be sufficient to rebut the presumption that follows from the general gift without words of limitation. *Gregg* v. *Bailey*, 120 Me., 263. The

necessity of the application of this general rule under discussion to preserve the integrity of estates apparently absolute except as cut down by express words, is therefore lacking in this jurisdiction, as is also the binding effect of long established precedent.    We think that in the instrument itself, and in the circumstances and conditions attending its execution, exists sound reason for holding that the decease of Frank W. Loring, mentioned in the fifth Section of the will, refers to his death whenever it should occur, before or after the decease of the testatrix.    Hence, upon his death November 12, 1923, the share of Miss Loring's estate which he then had in possession passed to the plaintiff, and she is entitled to recover the same from his personal representative into whose possession the money has been taken.

The form of action is questioned.    It is debt.    We do not, however, think it necessary to consider technical questions of pleading.    As in *Wright* v. *Holmes*, 100 Me., 508, 511, the case comes up on report, and we think it wiser to determine the vital questions at issue between the parties than to send the case off on a question of pleadings, if, which we do not decide, that be necessary.

In accordance with the stipulation of the parties, the finding being for the plaintiff, judgment must be for $937.32, with interest from November 12, 1923.

*Judgment for plaintiff for $1,113.03.*