MARK W. HODGDON AND EDWARD A. HODGDON, in equity,

*vs.*

DEBORAH A. CLARK, and another.

Hancock.    Opinion February 15, 1892.

*Equity. Deed. Cloud on title. Restraint on alienation. Life Estate.*

Upon a bill in equity to remove a cloud from title to real estate, it appeared that the plaintiff, Mark Hodgdon, conveyed his farm to his brother in fraud of creditors, and by a subsequent arrangement it was conveyed to the defendant with an oral agreement that it should be held for said plaintiff's support during his lifetime, and at his decease it should go to the children of his first wife. Afterwards the defendant conveyed the property to said plaintiff, and as a part of the same transaction received a mortgage back conditioned that he would not convey the premises for any other consideration than to secure his support, and in the event of such conveyance the difference between a reasonable compensation for such support and a just valuation of the property should be paid over to the children of the first wife. Still later said plaintiff conveyed the property to his co-plaintiff and took a mortgage back to secure the support of himself and wife during their natural lives.

*Held,* that the mortgage to the defendant is not void as being a restraint upon the alienation of property, and is not a cloud upon the title.

ON REPORT.

Bill in equity heard on bill, answers and testimony.

The case is stated in the opinion.

*Deasy and Higgins,* for plaintiffs.

Counsel argued that the conditions of the bond given by Mark W. Hodgdon to Deborah, are conditions in restraint of aliena-

tion and absolutely void ; that if the bond was not absolutely void for the above reason, at most, it simply defines Mark's power of disposal of the property and that he had conveyed the same, acting within the power given him by the bond, in good faith, for the consideration of a life support for himself and wife, and that in either event Edward was entitled to have the bond, given as aforesaid, cancelled and annulled.

Restraint of alienation : The power of alienation is an inseparable incident of an estate in fee. *Blackstone Bank* v. *Davis* 21 Pick. 42.

Conditions in restraint of alienation, in a grant of a fee, are void as repugnant to a grant. *Hall* v. *Tufts*, 18 Pick. 455 ; *Jackson* v. *Schutz*, 9 Am. Dec. 195 ; Devlin on Deeds, § 965 ; *McCollough* v. *Gilmore*, 11 Pa. St. 370.

Counsel also cited : *Richardson* v. *Richardson*, 80 Maine, pp. 585, 594 ; *Hall* v. *Preble*, 68 Maine, 100 ; *Stewart* v. *Walker*, 72 *Id.* 145 ; *Shaw* v. *Hussey*, 41 *Id.* 495 ; *Starr* v. *McEwan*, 69 *Id.* 334 ; *Nash* v. *Simpson*, 78 *Id.* 149, and the cases there cited.

*Baker, Baker and Cornish*, for defendant.

WHITEHOUSE, J. Bill in equity, brought by Edward A. Hodgdon and his father, Mark W., asking for the removal of a cloud alleged to be resting on the title to the homestead of Mark, situated on the island of Mount Desert.

It appears that the legal title to this property had not been in Mark for more than forty years prior to 1877, but for many years had been vested in his brother, Wm. Wallace Hodgdon. The purpose for which Mark thus kept his farm in the name of his brother is not left in doubt by the evidence. When the testimony is examined in the light of the history of the several conveyances to Wallace, of the situation of the parties at the time, especially the financial condition of Mark, and their subsequent conduct, the fact seems to be established beyond question that it was done as stated by Wallace, "to keep the property away from Mark's creditors." Certain it is that the arrangement had that effect ; for while the property was thus situated,

Mark took advantage of the bankrupt law, and this property was not surrendered to the creditors but remained undisturbed in the hands of Wallace until April 8, 1877. In the meantime, trouble had arisen between the families, especially between Wallace and Mark's second wife, and having now been discharged from all his indebtedness by proceedings in bankruptcy, Mark made repeated requests for the restoration of his property; but Wallace was unwilling to reconvey to Mark or his wife and at Mark's suggestion, a conveyance was made to the defendant, Deborah Clark, his oldest daughter by his first wife, for the "safe keeping" of the property, with an oral agreement that it should be held for her father's support during his life, and at his decease should go to the children of his first wife, Huldah B. Hodgdon. This appears to have been satisfactory to all parties, and the deed was delivered nearly a year afterwards to Mrs. Clark, charged in the minds of the parties with this trust in favor of her father. But, after the lapse of a year or more, Mark again became dissatisfied and renewed his importunities for a conveyance of the property or for some writing specifying the terms of the trust. As a result, Mrs. Clark, September 29, 1880, gave her father a quit-claim deed of the property and at the same time and as a part of the same transaction received from him a bond secured by a mortgage, containing the following condition, namely: "Whereas, I have this day taken a deed of the lot on which I now live together with another lot from the said Deborah A. Clark, I promise that I will not convey or assign said premises described in said Clark's deed, in no other way nor for any other consideration than to secure my support and maintenance during my natural life; and further, if the said premises are assigned for the purpose aforesaid, after deducting reasonable expenses for such support from a just valuation of said premises, the balance between the said compensation for said support and the just valuation of said premises shall be paid over to the children of the late Huldah B. Hodgdon, or their legal representative, in equal shares, in one year after demand is made for the same, then the above obligation to be of no effect, otherwise to be in full force and value."

March 31, 1886, Mark, whose possession of the place had never been interrupted and who was now living on it with his second wife and children, gave a deed of warranty of the place to the plaintiff, Edward A., who executed in return a bond for the support of his father and mother, secured by a mortgage of the same property, running to Mark W. and Mary J. Hodgdon. The following year a portion of the pasture lot was sold off for seven hundred dollars, Mrs. Clark releasing her interest without objection, and her father receiving all of the proceeds for the benefit of himself and family.    Thus, what Wallace and Mrs. Clark had apparently sought to prevent now seemed to be substantially accomplished; the property had practically passed under the control of the second family.    But the mortgage to Mrs. Clark might be a source of inconvenience and the plaintiff commenced these proceedings to have it cancelled and this "cloud" upon Edward's title removed.

In the bill as originally drawn, the plaintiffs ask that this be done on the ground that the bond and mortgage were executed under the influence of fraudulent representation on the part of Mrs. Clark, and of misapprehension and mistake on the part of her father.    But the testimony fails to raise even a suspicion of fraudulent procurement or undue influence, and clearly shows that the property was originally conveyed to Mrs. Clark without her knowledge, at the request of her father, and on terms entirely satisfactory to him; and that the subsequent transaction at the time the mortgage in question was given to Mrs. Clark, was clearly understood and the result freely accepted by her father.    The plaintiffs, therefore, abandoned the charge of fraud and now claim, as a matter of law that the mortgage is void, as being a restraint upon the alienation of property and repugnant to an estate in fee.

It has been seen that the conveyances made and caused to be made by Mark, which resulted in keeping the title to this property in his brother Wallace for so many years, was manifestly designed to place the property beyond the reach of creditors. "When a debtor has conveyed, assigned or in any manner transferred his property for the purpose of defrauding his creditors

and then seeks to recover from the grantee, the door is shut against him." 1 Pom. Eq. § 401, note 3 and cases cited. The fraudulent grantor parts with all his interest in the property conveyed to his grantee and the law will afford him no aid and equity, no relief in reclaiming it. *Andrews* v. *Marshall,* 43 Maine, 272. When the title to this property was vested in Wallace there was no resulting trust, or trust arising by implication of law, which could be made available to Mark in a court of law or equity. Wallace had the power to hold the property or dispose of it in any manner he deemed best. If he consented to reconvey it, or to transfer it to another for the benefit of Mark, he had a right to impose any conditions or restrictions not repugnant to established rules of law. True, deeds of real estate which are to endure as muniments of title, must have the quality of precision and permanency, and certain positive and stringent rules of law are found indispensable to secure that end. It is the rule, for instance, that a grantor cannot destroy his own grant. However much he may modify it with conditions, having once granted an estate in his deed, he cannot be allowed by a subsequent clause even in the same deed to nullify it. *Maker* v. *Lazell,* 83 Maine, 562.

It is also familiar law that alienation is incident to the enjoyment of property whether held in fee or for life. *Turner* v. *Hall. Sav. Ins.* 76 Maine, 530. But in the growth and progress of the law one rule has come to be regarded as paramount in importance to all others and is perhaps the only one that has no exception, and that is that the intention of the parties gathered from the whole instrument, or it may be from several instruments, relating to the same subject matter and being part of the same transaction, construed together, should always prevail and not be defeated when no positive rule of law or principle of sound policy is thereby violated. *Bradford* v. *Cressey,* 45 Maine, 9 ; *Ide* v. *Pearce,* 9 Gray, 350 ; *Haight* v. *Hamor,* 83 Maine, 453. The intent when apparent and not repugnant to any rule of law will ordinarily control technical terms ; for the intent and not the words, is the essence of every agreement.

The manifest intention of the parties disclosed by the deed,

bond and mortgage in question, was to give Mark Hodgdon his life support from the property and the remainder if any existed to the children of his first wife. And if the scrivener had been familiar with *Stuart* v. *Walker*, 72 Maine, 145 where the different modes of creating life estates, express and implied, with qualified and unqualified power of disposal, and remainder over, are critically distinguished and aptly illustrated, he would probably have sought to effectuate this intention by a single conveyance from Mrs. Clark, giving her father a life estate in certain and express terms, with the right, however, to dispose of it in his lifetime if needed for his support, and if anything should remain unexpended at his death the balance should go to the children of his first wife. But the uncertain and precarious nature of the remainder-man's rights in such a case was pointed out in *Richardson* v. *Richardson*, 80 Maine, p. 591 ; for with such a power of disposal, the life tenant may sell the property as a whole in consideration of his support and in the absence of fraud his judgment will control and the reversion be extinguished. It is, therefore, questionable if the untaught scrivener by the deed to Mark Hodgdon, and bond and mortgage back to Mrs. Clark as above described, has not " builded better than he knew" and accomplished the purpose more exactly than would have been done by the ordinary method. The deed from Mrs. Clark to her father was designed as the means of accomplishing an ulterior purpose, and gave him but an instantaneous seizin ; the legal title immediately passed back by virtue of the mortgage given to secure the bond. But the practical effect of the three papers was to give Mark a life estate by necessary implication with the qualified power to dispose of so much of the property as might be necessary for his support in the manner specified, and the balance if any existed, to the children of the first wife. The rule respecting the restraint of alienation is not more applicable here than in the case of the single instrument giving an express life estate with power of sale and remainder over. The property in whole or in part was to be devoted to the sole support of Mark. Two methods of accomplishing this appear to have been in contemplation. He could hold the equitable title in himself and sell off a piece of land occasionally

when necessary for his support, obtaining the consent and release of Mrs. Clark as was done in 1887. In that case there would be no breach of the mortgage ; at his death it would be discharged ; and as Mrs. Clark must be consulted with respect to the sale of each parcel she was content to have the portion remaining descend to all the heirs alike. But by the second method he could make a conveyance of the whole property to secure his support during his natural life without the consent of Mrs. Clark, subject, however, to the conditions of the mortgage which required the grantee to account to the children of the first wife for the balance between a reasonable compensation for the support and the just valuation of the property. Any other conveyance would violate the conditions of the mortgage and afford grounds for a foreclosure. Mark finally sought to avail himself of the benefits of the transaction by the second method. He gave his son Edward a warranty deed of the place and received a bond and mortgage for the support of himself and wife. This deed, however, conveyed only such interest as he had, and Edward took it subject to the terms of the prior mortgage to Mrs. Clark. It was not in the power of Mark and Edward at that time to make a final and conclusive agreement that the support to be furnished should be a full consideration for the conveyance. Their judgment would not control the rights of the reversioners under the Clark mortgage. Whether there will be a balance between a reasonable compensation for his support and the just valuation of the property, and if so how much, cannot be determined until the " support for his natural life " has been furnished. The fact that Edward consented to have the benefit of the arrangement extended to include the support of his mother is immaterial. The final adjustment must be made in conformity with the terms of the mortgage, and those terms do not appear to be repugnant to any established rules of law.

It is not apparent, therefore, that there is any present occasion for the interposition of the equity power of the court.

*Bill dismissed without cost.*

Peters, C. J., Emery, Foster and Haskell, JJ., concurred. Libbey, J., concurred in the result.