# APPENDIX.

86  572
94  434
86  572
101  36.

### *In re* ESTATE OF JOHN B. BROWN.

*Will.   Trust.   Income.   Distribution.   Survivors.*

The rule of construction for a will is the intent of the testator, to be gathered from the whole instrument.

A testator devised the residue of his estate to trustees during the life of the survivor of his children, the whole income to be distributed: first, in payment of annuities; second, balance annually, one tenth to a grandchild, and three tenths each to children during their respective lives; minors of a deceased child to be supported from the income during minority, but not beyond the term of the trust; and remainder over to grandchildren *per capita.*

*Held;* I. That the grandchild should be classed with the annuitants, and, having died without issue before the testator, its legacy lapsed and fell into the balance of income to be annually distributed among children, who took as a class, to share equally, but with the incident of survivorship.

II. That the share of a deceased child vested in the survivors, who might legally by deed of trust appoint its distribution to the deceased child's family during the continuance of the trust, so as to work equality among all the children and their respective families.

Bill in equity, heard on bill and answers, brought by the trustees under the will of John B. Brown, of Portland. The cause was heard before Mr. Justice HASKELL, who filed the following written opinion, that is now published with the opinions of the full court because of its intrinsic merit and the importance of the questions discussed and decided.

The case appears in the opinion.

Symonds, Snow and Cook, for the trustees, contended that the shares of income bequeathed to a grandchild, and to Philip

Henry Brown, during life should be disposed of as intestate property and be distributed among the heirs-at-law.

*Wm. Henry Clifford*, for the surviving son and daughter, contended that such shares should go to them during life as surviving children.

*Edward Woodman*, guardian for the minor grandchildren, contended that the shares became a part of the trust fund and should accumulate and be distributed among the grandchildren at the termination of the trust.

HASKELL, J. This is a cause in equity brought by the trustees under the will of John B. Brown, against all of his heirs, asking for construction of certain portions of the will. The defendants, who have attained their majority, and the minors, by their guardian *ad litem*, being all the parties interested in this cause, appear and answer and join in the prayer of the plaintiffs for the construction sought. The cause is heard upon bill and the answers of the several defendants. The following material facts appear :

John B. Brown executed his will on the 12th of March, 1877, and a codicil thereto, 13th of February, 1879, and died on the 10th of January, 1881. At the time of executing the will and codicil he had three children living, two sons and a daughter, all married and having children, and one grandchild, the daughter of a deceased son, and her mother, the deceased son's widow, who had then remarried. The granddaughter died before the testator, but after he had made the codicil. The eldest child, a son, has died since the death of the testator. The other two children survive.

The will disposed of the testator's entire estate. For his wife he made ample provision in lieu of dower and of her distributive share. Numerous legacies and annuities were given to charitable institutions, collateral kindred and others not his heirs.

He devised in fee the Falmouth hotel, an unproductive piece of property, to his two sons, and conveyed, at his death, a parcel of real estate to his daughter.

He devised to the sons a block of stores and $100,000 each, less what they respectively might be owing him, and also $100,000 each upon the death of his wife, in all $200,000 each and a block of stores.

He devised to his daughter $50,000, and also $50,000 and a block of stores and land in trust. Also $100,000 upon the decease of his wife, in trust, to be paid to her at the discretion of his trustees, in all $200,000 and a block of stores and land.

He devised to the widow of his deceased son the income of $20,000 during life, and the principal to her daughter, his grandchild. He also devised to the grandchild a block of stores and a wooden house and land, and upon the decease of his wife $50,000 more, in all $70,000 and a block of stores and land. Showing an intent to give equal shares to his living children, and one third of a share to the grandchild.

He devised to each of his grandchildren living at the time of his decease $5,000.

Item twenty-sixth. "I give, devise and bequeath all the residue of my estate of every kind and description to . . . my trustees, in trust, to be by them held, invested, preserved, and disposed of as follows :

"The personal estate is to be safely invested in bank stocks or such other securities as will produce the best lawful income. The net dividends, income, rents and interest accruing and received from all this residuary estate, property and fund is to be by said trustees applied, so much thereof as may be required for that purpose, to the payment of the annuities hereinbefore directed to be paid by said trustees ; and the balance thereof distributed annually or semi-annually, one tenth part thereof to my granddaughter, Matilda G. Brown, and three tenths part thereof to each of my children, Philip H., John M., and Ellen, during his or her life. At the decease of the last survivor of my children, all the residue of my estate and property is to be conveyed and distributed in equal proportions to and among my grandchildren then living, and to and among the lawful issue of any one deceased and lineal descendants therefrom. The grandchildren taking *per capita*, and their lineal descendants by right of representation."

Codicil. "I, John B. Brown, named as the testator in the will to which this is annexed, do hereby make this present codicil, which I do order and direct shall be taken as a part of my annexed last will and testament, and which in all respects, excepting wherein it is altered or modified by this codicil, I do hereby re-publish and affirm.

"Second. It is my further will and I do hereby direct that if, during the lifetime of any of my children, any of them should die having a minor child or children unprovided with a suitable support during minority, my said trustees shall provide for such child or children a suitable support from the income of the general trust fund created in and by the twenty-sixth clause of my will, during the minority of such child or children, but not beyond the lifetime of all my children."

In apt phrase, the tenor of the will and codicil may be expressed:

A devise of the residue of the estate to trustees during the life of the survivor of the testator's children, the whole income to be distributed, first, in payment of annuities, second, balance annually, one tenth to grandchild, three tenths each to children during their respective lives. Minors of a deceased child to be supported from the income during minority, but not beyond the term of the trust, remainder over to grandchildren, *per capita*.

The testator disposes of his entire estate. He creates a trust for an uncertain term, but for a term that is sure to elapse. He distributes the whole income of the trust annually. He first applies it to the payment of annuities, then one tenth of the balance to a grandchild by name, not during its life, but during the life of the survivor of his children, for, when that event happens, the trust is to cease, and this grandchild, if living, takes an equal share with the other grandchildren in the remainder. Its share although of uncertain amount, stands like the annuities, to be paid from the income, and may properly enough be classed with them. Both, so far as the words of the devise show, might continue beyond the term of the trust. The former, the annuities, if the annuitants survive all the children of

the testator, must be provided for, although the will makes no provision for such contingency. But, the share to the grandchild, were it then living, would be adeemed by the manifest intent of the testator, for it then would share in the principal fund, from the income of which it had previously received its annual share. But the grandchild having died before the testator without issue, its annual share of income, like an expired annuity, ceased to be a charge upon the whole income, thereby increasing the remainder to be divided under the terms of the will. The testator, perceiving that, perchance, some minor grandchild might need support by reason of the death of one of his children, whose share of income was limited to its life, made provision for such contingency by a carefully drawn codicil. In it, not a word is said about the shares specifically devised to his children and to the grandchild, undoubtedly because he supposed such share of income would fall into the balance that he had directed to be distributed annually. Moreover, the grandchild died before he did, and had he supposed that it would be thought that its share was not disposed of by the will, it is incredible that he would not only have made provision for that condition of affairs, but also for the contingency sure to come, some child's decease before the others.

What then is the situation at the death of the testator? A trust had been created to continue during the life of the survivor of his three living children. The income was to be distributed annually. Annuitants were to be first paid, and the balance remained for distribution among his three chilren or not at all. One of these children has since died. It is odd to say its share of income must be distributed under the express command of a will that fails to name to whom it shall go. To avoid such a conclusion, the whole will must be carefully scrutinized to see if intended donees are not indicated. Distribution to heirs follows from an entire absence of testamentary provision concerning a portion of the estate. We have seen no authority for distribution of income to heirs, under a command for distribution that did not indicate who should take the property. In the absence of such indication, it is more reasonable to disregard the

command, and let the income fall into the remainder and be distributed under the general residuary clause. This view seems to be sustained by the authorities cited at the bar. If, therefore, the will does not specifically distribute the whole income in this cause, the portion omitted falls into the capital of the trust as it accrues year by year and becomes a part of the trust fund as fast as received.

The manifest intention of the testator not to die intestate as to any part of his estate ; his express direction that all the income of the trust shall be distributed annually ; his provision in the codicil for minors of deceased children ; his failure to mention in the codicil the share of income bequeathed to a deceased grandchild aided by the policy of the law against accumulations, lead to the irresistible conclusion that the testator intended to bestow the whole income, first to annuitants, and then to his children as a class, to be enjoyed equally and severally so long as more than one of them should survive, and that the survivor should take the whole until his death, when the trust shall cease and the trust fund be distributed equally among the grandchildren and the issue of a deceased grandchild by right of representation. The whole will speaks of equality, first among children and then among grandchildren *per capita*.

Nor does this view do violence to the established rules of law. The bequest of income to the granddaughter lapsed. "It was by implication conditional upon the event that the legatee survived the testator. The law presumes that just so much was taken from the general legatees for the benefit of the particular legatee, and the particular intent failing, the general intent prevails. The deceased legatee having no lineal descendant, R. S., c. 74, § 10, does not alter the result." *Stetson* v. *Eastman*, 84 Maine, 369.

The bequest of income to the three surviving sons in equal shares during, "his or her life," may be considered an estate to be enjoyed as tenants in common, that is, in equal shares, shares paid to each one, with the incident of survivorship. Such taking is not necessarily repugnant to the doctrine of survivorship. *Doe d.* v. *Abey*, 1 M. & Sel. 428. The expressed share of three

tenths each is merely declaratory of the law of enjoyment among joint tenants that all shall share alike.   In *Stetson* v. *Eastman*, *supra*, it is .said, in England, "a devise or bequest to two or more persons implies a joint-tenancy unless the contrary appears.   Here it implies a tenancy in common unless a different intention is indicated by the will and attending circumstances. Our institutions and policies are adverse to the doctrine of survivorship as applied to tenants holding in their own right, although there may be meritorious exceptions."   *A fortiori* are they adverse to accumulation.

The court further says : "We are not to be understood as opposing or deprecating the maintenance of joint estates, created by devise or deed, when the testator or donor intentionally constructs such an estate.   On the contrary, it is the actual intention that we would ascertain if possible and be governed by it.   The case of *Anderson* v. *Parsons*, 4 Maine, 486, cited by counsel, is an illustration of the extent to which the court may go to carry the intention of a testator into effect, in which case the theory of a joint-tenancy of real estate prevailed as having been actually intended by the testator.   And still, we should not regard that as so strong a case in its facts for the application of the principle of survivorship as either of the cases cited from the Vermont reports.   (*Gilbert* v. *Richards*, 7 Vt. 203 ; *Decamp* v. *Hall*, 42 Vt. 483.)   The divergence between the learned court of that state and ourselves is that, whilst the principle of survivorship is by them apparently admitted, although as appears to us, not necessary to the results arrived at in their cases, we do not admit that the principle, as interpreted by the English courts, now exists or ever did exist in our jurisdiction.   We do not contend that the doctrine is never applicable, but that it is not generally so.   There are special cases where the principle has a most useful adaptation.   Where the will speaks, that governs ; but where the will is silent the law speaks and declares the intention of the testator.   It declares for tenancies in common — in equality."

True, the court says in the same opinion : "The explanation of the apparent omission to embrace all kinds of property within

the legislative interdiction is that the lawmakers did not understand that the principle ever applied to any property other than real estate.  Nor were they, in our judgment, mistaken in that supposition."  The meaning is that the law does not make joint-tenancies in chattels or personalty.  "Where the will is silent, the law speaks and declares the intention of the testator. It declares for tenancies in common — in equality."

"In ascertaining this intention the court is not confined to any particular clause, but is at liberty to consider all parts of the will, inasmuch as one clause is often modified or explained by another.  The intention of the testator in one particular paragraph, if not entirely clear, may be ascertained when other paragraphs or clauses are considered and their bearing and relation one with another, taken into account.  The intention of the testator must be the guiding star."  *Bray* v. *Pullen*, 84 Maine, 187.

It must be noticed that the income is made a special trust fund for special purposes to be applied annually as it accrues, and that, at the expiration of this trust, the principal is devised to a class of persons then living, share and share alike.  This remainder is not vested, but contingent, for the persons to share in it are uncertain and cannot be named until the devise over calls for distribution.  So that, should part of the income fund fail of takers named in the will, it cannot be distributed at once among the remainder-men, for they are unknown, and it must be held to either accumulate or go to survivors or be considered intestate property that would have to be distributed among persons manifestly against the will of the testator.

In *Loring* v. *Coolidge*, 99 Mass. 191, the testator devised income in trust, "to be paid equally to my brother and to my sister during their natural lives, and, at their death, the principal I give to my nephews and nieces then surviving."  The brother died and the court held that the sister took the whole income during the continuance of the trust.  The court says : "The provision that the income is to be paid equally to the brother and sister does not necessarily imply a separation of their interests in the trust.  Payment of the income, one half

to each during their joint lives, and the whole to the survivor, is equal as between them. If there were anything to indicate a gift over of income, the payment would be made equal by a division between the survivor and the successors to the share of the deceased beneficiary for life. *Jones* v. *Randall*, 1 Jac. & Walk. 100. The omission to make any other disposition of the income, during the life of the survivor, is quite as significant upon the one side as the omission to provide specifically for the right of survivorship is upon the other."

"In the case at bar, the argument for the heir at law is, that a gift, by will, to individuals described by name, though they may constitute a class, shows the testator's intention to give to them only as individuals. And this seems to be the established general rule of construction. So Lord Cottenham strongly states it in *Barber* v. *Barber*, 3 Myl. & Cr. 697, on a view of the decisions upon this point. 'A gift to a class,' he says, 'implies an intention to benefit those who constitute the class, and to exclude all others; but a gift to individuals described by their several names and descriptions, though they may together constitute a class, implies an intention to benefit the individuals named. In a gift to a class you look to the description, and inquire what individuals answer to it; and those who do answer to it are the legatees described. But if the parties to whom the legacy is given be not described as a class, but by their individual names and additions, though together constituting a class, those who may constitute the class at any particular time may not, in any respect, correspond with the description of the individuals named as legatees. If a testator gives a legacy to be divided amongst the children of A. at a particular time, those who constitute the class at the time will take; but if the legacy be given to B., C. and D., children of A., as tenants in common, and one die before the testator, the survivors will not take the share of the deceased child.' Subsequent cases in England have been decided on the same general rule. *Bain* v. *Lescher*, 11 Sim. 397; *Boulcott* v. *Boulcott*, 2 Drewry, 25. See also *Frazier* v. *Frazier*, 2 Leigh, 642; *Mebane* v. *Womack*, 2 Jones Eq. 293.

"But, as this rule of construction depends on the intention of the testator, it is clear that his intention cannot be conclusively inferred from the mere fact that he mentions, by name, the individuals who compose a class. It is only a *prima facie* rule. Lord Cottenham, in the case just cited, says the testator may undoubtedly give a right of survivorship *inter sese*, by expressly directing it. See also *Doe* v. *Abey*, 1 M. & S. 428. And it is not to be doubted, that when the intention of survivorship is in any other way plainly shown by the will itself, or by the will and such evidence of extrinsic facts as is legally admissible for the purpose of showing it, such intention must prevail. No rule of law gives an inflexible sense and effect to a bequest made to children of a family, by their several names, nor to a bequest to them 'equally,' or 'in equal shares.' The construction is to be made, not solely on the bequest itself, but on the bequest taken in connection with the context. *Knight* v. *Gould*, 2 Myl. & K. 298. The word 'equally,' says Lord Thurlow, 'has been held to give a tenancy in common in a legacy,' but that is always with reference to the other parts of the gift. The general intent of the testator will overrule the word 'equally,' rather than the word 'equally' shall overrule the general intent of the testator. *Frewen* v. *Relfe*, 2 Bro. C. C. 224. In that case a residue, given to executors equally, was held, upon the whole of the words, to be given to them as joint-tenants. See also *Armstrong* v. *Eldridge*, 3 Bro. C. C. 215, and *Anderson* v. *Parsons*, 4 Greenl. 486." *Jackson* v. *Roberts*, 14 Gray, 550 ; *Schaffer* v. *Kettell*, 14 Allen, 528 ; *Dow* v. *Doyle*, 103 Mass. 489 ; *Dowe* v. *Johnson*, 141 Mass. 287.

"It is no doubt the general rule of construction, that, when a bequest is made to individuals by name, although they in fact constitute a class, the intention to give them individually is indicated, and thus the share of one dying before the testator will become intestate property. But this rule, founded on the supposed wish of the testator, may be controlled by those portions of a will, if such exist, which indicate an intent that such shall not be the result. If it appears from the whole will, that the testator intended his beneficiaries should take as a class,.

the share of one who dies before the testator will go to the survivors. The fact that the legatees are a class is important, and the circumstance that they are mentioned by name is far from conclusive that they are not to take as such." *Towne* v. *Weston*, 132 Mass. 516.

As said in *Jackson* v. *Roberts*, *supra*, " we may, therefore, safely adopt the conclusion of the Lord Chancellor Sugden, in *Shaw* v. *M'Mahon*, 4 Dru. & War. 438, that if we can discover in this will sufficient evidence of the intention of the testator that the remaining children should take the share of income bequeathed to " Philip Henry, " there is authority to give effect to that intention ; and we are of opinion that sufficient evidence of that intention appears in this will."

The one tenth of income bequeathed to the grandchild, who died before the testator, has been withheld from distribution and added to the *corpus* of the trust. This should not have been. It should have been distributed among the children in equal shares, the same as the remaining balance of income has been distributed. And so much thereof as accrued and became payable before the death of Philip Henry should now be paid, one third to his executors and one third each to the surviving children. And whatever has accrued since then, and shall hereafter accrue, must be distributed as a part of the balance of income and not accumulate.

The two surviving children have, by their deed to the trustees, placed all the income from the estate that they are or may be entitled to receive above one third each, in special trust, for the benefit of their respective families, in case of their decease, and of the family of their deceased brother Philip Henry, so that the entire income distributed and to be distributed under their father's will shall be held and distributed by said trustees among the testator's three children, Philip Henry, John Marshall and Ellen Greely, and their respective families after the decease of either one, in equal shares of one third each during the period of the trust.

This deed creates a trust of property belonging to those who have so declared a trust. The property was their own, and

they had a right to dispose of it at their own pleasure. When accepted by the trustees, it becomes effective and binding upon them, and they may be required by the cestuis named in it to comply with its provisions and pay according to its terms. It declares equality, is meritorious and just and must be confirmed.

*Decree accordingly.    Costs to be paid out of the estate.*

(No appeal was taken.)