Ina M. Buswell *vs.* Thomas C. Wentworth, et al.

York.      Opinion, September 9, 1936.

*Willard & Willard,* for plaintiff.
*Clifford E. McGlauflin,*
*Elias Smith,* for defendants.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

MANSER, J. Appeal from decree dismissing bill in equity, brought to remove a cloud on the title to real estate. The sitting Justice made no findings of fact; but from an examination of the record and the allegations in the bill the case for the plaintiff may be stated as follows:

As a result of negotiations for purchase, the plaintiff received a warranty deed dated May 23, 1935, of land and buildings in Cornish, Maine, free of encumbrances except three mortgages upon which there was then due an aggregate sum of $1,875. The purchase price was $3,000, and the plaintiff paid the difference between the two sums for the equity, and took possession of the property.

There was, however, of record in the Registry of Deeds an instrument dated December 15, 1933, in which the grantors in the deed to the plaintiff, describing themselves as lessors, "in consideration of one dollar and other sufficient consideration do hereby let, remise and release unto Thomas C. Wentworth of said Cornish, the receipt whereof is hereby acknowledged, the following described premises." The description is substantially that contained in the deed.

The document then continued: "Also said lessors are to have a right of way to pass and repass from Trail No. 25 to Trail No. 205, on the east side of the barn of said lessors, and adjoining thereto, and shall be over a strip twenty feet wide along the westerly boundary line of the leased premises, for the term of ten years, from December 15, 1933, reserving to the Texas Company such rights as it now has under a certain lease, recorded in said Registry, Book 836, Page 44, or may hereafter have under said recorded lease, and shall come into the full possession and enjoyment of said leased premises upon the termination of said recorded lease, whether it be an operation of law or otherwise." Then follows the testimonium clause.

The evidence shows that the prior lease referred to and which was given to the Texas Company on April 3, 1933, for a period of five years, had been terminated by the parties thereto at the time of the purchase by the plaintiff.

The first contention is that the lease is ambiguous and uncertain and when judicially construed it must be determined that no term is prescribed and no rent reserved, that nothing more than a tenancy at will was created, which was determined by alienation of the premises, and in consequence the alleged lease should be declared null and void.

The second contention of the plaintiff is that assuming the document sufficient in terms to convey a leasehold interest, the defendant is estopped by his conduct prior to the purchase of the property by the plaintiff from asserting any rights thereunder.

Upon this phase the plaintiff claims support from the record for the following asserted facts: Thomas C. Wentworth, the defendant, was the mortgagee in two of the mortgages referred to in the deed and the amount due thereon at the time of the sale was $1,020. There was a gasoline filling station upon the premises and the

purpose of the plaintiff was to operate the station, and this constituted the real inducement for the purchase. The defendant was also the agent for the sale of Texas Company products, principally gasoline and oils. During negotiations, the plaintiff interviewed the defendant for two purposes, one relative to the purchase of gasoline and the other as to encumbrances. She inquired of him concerning the latter, and he replied there were none to his knowledge except the three mortgages above referred to; but that he did have a writing to assure or protect him in the exclusive sale of Texas Company products to the owner of the station. Replying that this was satisfactory, as it accorded with her intention, she then inquired as to the margin or "spread" between the wholesale and retail prices of gasoline, to ascertain the gross profit to her, and was informed that it was four cents per gallon. The defendant made no other reference, direct or indirect, to the document under which he now claims. He knew she was negotiating with the owners, who were in apparent possession of the property; that the purchase would require the assumption of the mortgages in addition to the payment of whatever sum might be agreed upon for the equity; that she was intending to occupy and operate the premises; that she was seeking information from him as to encumbrances, and the amount of the gross profit on purchases of products from him. He informed her also from his own records as to volume of business transacted in former years. He made no claim to her that he was in actual or legal possession of the premises, or that the owners were occupying as his agents or tenants.

After the sale had been consummated and her own agent put in charge and possession, the defendant, with the first delivery of gasoline, insisted upon the payment of one cent per gallon in addition to the wholesale price under the claim that he was the lessee of the premises, and that if she desired to remain as a tenant under him, this amount would be exacted as rental upon all gasoline sold by her. If the plaintiff submitted to this charge, her gross profit was immediately reduced twenty-five per cent, and evidence was offered that the defendant asserted that the lease upon that basis was worth $5,000 to him for the remainder of the term.

Payment was at first made under protest; but upon later refusal of the exaction, suit was brought by the defendant against the

plaintiff to collect the amount charged under guise of rental. This suit was discontinued when the present proceedings were brought.

The explanation of the defendant as to his failure to inform the plaintiff of the claims he later asserted under the lease was that he did not want to spoil the trade.

The position of the defendant is that his actual representations were not as positive as claimed; that concerning his failure to inform the plaintiff as to the nature of the lease, he was under no legal obligation to speak; that the lease was of record and the plaintiff thus had constructive knowledge of its contents; and further, that the plaintiff procured the services of an attorney before the sale was completed, who searched the title and found the record of the lease, thereby imputing actual knowledge to the plaintiff of its contents.

The reply by the plaintiff to these assertions is that, if chargeable with notice, the lease being silent as to rental and ambiguous in other respects, the defendant is bound by his own explanation as to the purport and intent of the instrument.

The defendant in his testimony refers to similar leases, presumably as constructive or implied notice of the usual terms or obligations thereof.

It does appear that the owners had given a lease to the Texas Company, as before noted, which appeared in the chain of title, perhaps warranting the inference that the one given the defendant was of similar intent. The distinction, however, is that while the Texas Company became party to an indenture which on its face was a lease, still the owners remained in possession, and the evident purpose was to secure the exclusive sale of its products, for which privilege the Texas Company paid or allowed the owner one cent per gallon upon the price of gasoline as rental. In other words, the owner received the benefit of a discount of one cent per gallon so long as the Texas Company products were used exclusively. The defendant, however, instead of paying one cent per gallon for a similar privilege, undertakes to charge that amount against the plaintiff for allowing him to furnish her with these products.

The third proposition asserted by the plaintiff is that if the defendant is not estopped from asserting any rights whatsoever under the instrument, then it should be held that he was estopped from

asserting rights other than as security for the payment of his mortgage indebtedness.

The plaintiff urges that the record shows the defendant testified he was the owner of two mortgages, subject to a prior one of about $850, that any equity in the property was of doubtful value, and the lease was taken as security for the payment of his loans.

As set forth by the plaintiff, her plight is, if the document constitutes a valid lease unmodified by any statement made by the defendant as to its purpose, then she holds possession of the premises by his sufferance or permission and subject to ouster unless she complies with his demand for rent, the amount of which can be fixed arbitrarily by him; and if ousted, she would get no benefit from the property for a period of more than seven years, the remainder of the term of the lease, although meanwhile compelled to pay interest and principal of the mortgages. All these considerations are urged as ground for the application of the doctrine of estoppel by conduct.

Summarized therefore, the insistence of the plaintiff is,

(1) That the lease is invalid because no term is created.

(2) That if valid, the defendant is estopped from asserting any rights thereunder.

(3) That in any event the defendant is estopped from asserting any rights other than for security.

The plaintiff invokes relief upon the well-settled principle that courts of equity will order to be cancelled, or set aside, or delivered up, deeds or other legal instruments, fraudulent, fictitious and void, which are a cloud upon the title to the real estate. *Gerry* v. *Stimson,* 60 Me., 189; *Chafee* v. *Fourth National Bank of N. Y.,* 71 Me., 514.

Was the lease void *ipso jure?* The plaintiff maintains it is an instrument of doubtful import, denominated an indenture, but signed only by the grantors and under which they "let, remise and release unto Thomas C. Wentworth" the described premises. No rent is reserved. The only mention of a term is confined, according to a literal construction, to the reservation of a right of way over a strip of land twenty feet wide along the westerly boundary "for the term of ten years."

The instrument is inartificially drawn. It is ambiguous, and a proper subject for judicial interpretation.

Applying the fundamental rules of construction, it must be borne in mind that no particular form of words is necessary to constitute an instrument a lease.

The criterion is the intention of the parties, to be derived from the whole instrument.

No covenants on the part of the lessee are incorporated, and his signature was not necessary.

Reservation of the payment of rent is not essential to create the relation.

Courts are liberal in sustaining intent if it can be shown consistently with the rules of law. 16 R. C. L., Landlord and Tenant, pp. 541, 542; *Pike* v. *Munroe*, 36 Me., 309 at 315; *Hodgdon* v. *Clark*, 84 Me., 314, 24 A., 862; *Morse* v. *Phillips*, 108 Me., 63, 78 A., 1125; *Perry* v. *Buswell*, 113 Me., 399, 94 A., 483.

The phrase "for the term of ten years" is not in correct juxtaposition, but as has been well said, juxtaposition is a very unsafe criterion of continuity. It is more reasonable to interpret the phrase as defining the period for which the lease is granted and the right of way coincidently reserved, than to adopt the strained construction that the lease is silent as to its term, although a right of way is reserved to the lessors for ten years.

Sufficient has been said to warrant the conclusion that the instrument itself, aside from extrinsic evidence as to its purpose, in terms grants to the defendant a ten-year leasehold interest. It therefore can not be regarded as a legal nullity.

The lease, being for more than two years, was recorded, as required by R. S., Chap. 87, Sec. 14. By reason of such record, the plaintiff is chargeable with notice of its existence and contents, and in addition, as stated, an attorney employed by her to examine the title found the lease on record.

The plaintiff does not gainsay such notice, but insists that the import of the instrument was uncertain and she was entitled to rely upon the representations of the defendant with respect thereto.

Under this doctrine is the defendant estopped from asserting *any* rights under the lease?

The general principles of estoppel are clearly and fully enunciated in *Rogers* v. *Street Railway*, 100 Me., 86, 60 A., 713.

In *State* v. *Page* (S. C.), 40 Am. Dec., 608, cited in 16 R. C. L., 542, the Court said: "It is true, rent is not essential to a lease; for, from favor, or valuable consideration, the tenant may have a lease without any render. Yet that must be in a case where a lease was clearly intended. When, upon construction, it is doubtful whether a lease was intended or not, then it constitutes a very important circumstance, that rent was not reserved, *eo nomine* or substantially."

In *Hurd* v. *Chase*, 100 Me., 561, 62 A., 660, Emery, J., said: "True, the reservation of the life estate in the deed is not in terms conditioned or otherwise than absolute, but since this Court has possessed full equity powers it has had full power to go beneath the terms of a conveyance, or reservation of an estate to ascertain whether it is in fact unconditional or only for security for some obligation. *Reed* v. *Reed.*, 75 Me., 264, *McPherson* v. *Hayward*, 81 Me., 329, 17 A., 164. And for this purpose the Court may even resort to oral evidence. *Knapp* v. *Bailey*, 79 Me., 195," 9 A., 122.

In *Briggs* v. *Johnson*, 71 Me., 235, it is stated: "The Court will only intervene when the controverted deed or other instrument appears on its face to be valid and extrinsic evidence is required to show its invalidity."

If proved, the estoppel would be a bar to a suit at law to recover rent from the plaintiff as a tenant of the defendant, or to an action of ejectment. She is entitled, however, to seek appropriate equitable relief, and is not relegated to her defenses at law nor need she take the risk of an assignment of the lease by the defendant.

Yet the difficulty with the plaintiff's case is that the defendant is not estopped from asserting *any* rights whatsoever, because by her own proof the purpose of the instrument was to secure to the defendant certain rights, i.e., his own investment under his mortgages and the continuation of a gasoline station exclusively for sale of the products handled by him.

Speaking of the authority for cancellation of instruments, the Court, in *Farmington Village Corp.* v. *Bank et als.*, 85 Me., 46, at 54, quotes with approval the following language: "The party claiming it should show clearly and beyond all reasonable doubt,

not only that the instrument is void at law and can never be enforced there, but that in equity also it never ought to be enforced or attempted to be made use of *for any purposes against him.*"

If the instrument is cancelled, then the defendant is left without an effective weapon to assure the sale of his products and without its added security for the protection of his mortgages.

The bill by its allegation and prayer seeks cancellation only. As said in *Loggie* v. *Chandler*, 95 Me., 220, 49 A., 1059, 1060, "The prayer for relief is as essential a part of a bill in equity as is the statement of facts. The Court cannot go beyond the one any more than the other. The respondent need not anticipate a decree that is not asked for."

In Whitehouse Equity Practice (1915), Vol. I, Sec. 408, the rule is stated: "A decree in equity can grant only such relief as is justified by the allegations and the evidence. The Court will only decree on the case made by the pleadings even though the evidence may show a right to a further decree. A decree granting relief outside the issue raised by the leadings is a mere nullity and open to collateral attack."

So in *Merrill* v. *Washburn*, 83 Me., 189, 22 A., 118, the opinion says: "Equity decrees must be based upon the allegations in the bill. Prayers for relief must be unavailing, unless preceded by allegations showing a complete case, authorizing the exercise of equity jurisdiction. The most ample evidence is useless without sufficient statements in the pleadings. Evidence without allegation is as futile as allegation without evidence."

If equity can afford any relief it must be by way of reformation of the instrument, so that it will express in apt terms the actual agreement and undertaking of the parties. Such reformation is not sought. As to whether relief of this character is obtainable, the Court is not now called upon to decide. Upon the present record the decision of the sitting Justice must be sustained, except that under authority given in R. S., Chap. 91, Sec. 53, it is deemed proper that the decree be modified so that the dismissal of the bill shall be without prejudice and without costs.

*Appeal dismissed.*
*Decree in accordance with*
*this opinion.*